## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

RODOLFO COVERNALI        )
           )
vs.                  )       Civil Action No. 3:22-cv-270
           )
HOME DEPOT U.S.A., INC.     )       JURY DEMANDED

## PLAINTIFF'S ORIGINAL COMPLAINT

## NATURE OF THE CASE

1.    This is a brain injury case that arises from Home Depot U.S.A., Inc.'s ("Home Depot") practice of storing heavy inventory on "sky shelves" that soar dozens of feet above customers' heads. Despite decades of deaths and serious injuries caused by this practice in other Home Depot stores, Home Depot chose not to secure its inventory, allowing a box of metal pipes to crash down onto Rodolfo Covernali's head. Mr. Covernali lost consciousness and continues to suffer from serious brain, head, neck, and shoulder injuries caused by Home Depot inventory smashing onto his head.

## PARTIES

2.    Plaintiff Rodolfo Covernali is an individual and resident of Texas.

3.    Home Depot U.S.A., Inc., is a Delaware corporation that says its headquarters are in Georgia. Home Depot can be served with summons through its registered agent: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

4.     This Court has diversity jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

5.     Home Depot has sufficient minimum contacts with Texas to be subject to personal jurisdiction in this state with respect to Mr. Covernali's claims.

6.     Pursuant to 28 U.S.C. § 1391, venue is proper in the El Paso Division of this Court because all or a substantial part of the events or omissions giving rise to this claim occurred in El Paso County, Texas.

## FACTUAL BACKGROUND

7.     Part of Home Depot's national business model is to reduce warehouse expenses for its inventory by storing inventory on store shelves directly above the merchandise that is displayed for customer purchase.

8.     High stacking of goods, or "sky shelving" as it is known, was introduced in the retail industry in the 1980s by giants including Home Depot.

9.     Warehousing goods is expensive, so Home Depot saves millions of dollars by turning its stores into working warehouses.

10.     This business practice has been a problem for decades, resulting in thousands of injuries to customers at Home Depot stores nationwide.

11.    For example, a Home Depot official has reported that Home Depot receives 185 injury claims a week, many involving falling goods.

12.    During one 18-month period for which public data is available, 68 customers sued Home Depot for injuries sustained from items falling off shelves.

13.    At least three people have been killed by goods falling off shelves at Home Depot stores.

14.    As shown in the red-circled example below, Home Depot keeps still-boxed packages of inventory in an area out that is out of arm's reach but still above the unboxed merchandise that is arranged for customer purchase:



15.    Despite using space directly above customers' heads as a warehouse, Home Depot placed no protective bars, webbing, nets, or other devices to prevent stored inventory from falling off the high storage shelves and onto customers below.

16.    On July 7, 2021, Rodolfo Covernali went to buy supplies at Home Depot Store #0522, which is located at 11360 Rojas Drive, El Paso, Texas 79936.

17.    During business hours on July 7, 2021, Home Depot store #0522 was open to the public, and Mr. Covernali had Home Depot's permission to be in the store.

18.    At the time of the incident on July 7, 2021, Mr. Covernali was an invitee at Home Depot Store #0522.

19.    While at Home Depot, Mr. Covernali entered the store's Aisle 6, where certain closet supplies were merchandised for sale.

20.    As he was attempting to examine some of the closet supplies for sale, an overhead box of metal pipes fell onto Mr. Covernali's head.

21.    The boxes of metal pipes were too high for any customer to have placed them there, and only employees of Home Depot could have been responsible for storing the pipes in this high area that required a ladder or forklift to access.

22.    The layout and setup of Home Depot product bays are guided by "planograms," which are visual diagrams created by Home Depot. Storing metal pipes above the closet supplies was no accident; Home Depot had a planogram

applicable to Aisle 6 at store #0522, and that planogram called for Home Depot employees to store the metal pipes exactly where they did.

23.    Based on the planogram applicable to Aisle 6 in store #0522 as of July 7, 2021, Home Depot employees placed the metal pipes onto the shelf from where they came crashing onto Mr. Covernali's head. In other words, Home Depot created the hazard and did so purposefully as required by its own planogram.

24.    Home Depot has written policies requiring stores to shrink-wrap all goods stacked high on shelves, but as the photo above demonstrates, Home Depot often does not follow its own policy and does not do so at store #0522 in El Paso.

25.    Steven Mills, a former director of safety for Home Depot, reported that, as early as 2001, nearly 75 percent of Home Depot stores installed netting to contain the inventory stored on high shelves inside the store.

26.    Despite two decades of knowledge about the risks of falling inventory and the need for netting to contain that inventory, Home Depot chose to use no such netting for the metal pipes that it stored above the area where Mr. Covernali was shopping.

27.    Home Depot failed to adequately train its personnel on how to safely place, store, and secure inventory placed above customers' head. Despite decades of subjective knowledge about the safety value of netting and shrink wrap for the inventory stored on sky shelving, Home Depot did not adequately train its clerks at the El Paso store to follow those safety protocols when storing inventory in Aisle 6.

28.    If Home Depot had properly trained its personnel on how to safely place, store, and secure inventory, then the metal pipes would never have been stored above the closet rods—let alone without netting or shrink wrap—and the incident that hurt Mr. Covernali could never have happened.

29.    Boxes of falling metal pipes are not the kind of casualty that ordinarily occur absent negligence.

30.    In the ordinary course of the retail business, goods stored on high shelves do not fall onto customers selecting items for purchase.

31.    Mr. Covernali became immobilized when the pipes smashed into his head, and a Home Depot called an ambulance upon seeing Mr. Covernali's condition.

32.    Near Aisle 6 at Home Depot store #0522 on July 7, 2021, there was a video surveillance camera mounted to the ceiling in the space between Aisle 6 (where the incident occurred) and Aisle 44 (which is directly behind Aisle 6) (the "Aisle 6 Camera"). That camera would capture activity in Aisle 6.

33.    One day after the incident, Mr. Covernali's attorneys delivered and faxed a letter to Home Depot requesting that Home Depot preserve the video footage showing (1) its employees' actions in the aisle and (2) the events leading up to Mr. Covernali's injuries.

34.    No later than July 8, 2021, Home Depot had reasonable notice of a need to preserve footage from the Aisle 6 Camera.

35.    According to Home Depot, the video footage from the Aisle 6 Camera for July 7, 2021, no longer exists.

36.    Home Depot destroyed, or did not preserve, the video footage that the Aisle 6 Camera captured on July 7, 2021.

37.    Had the video footage been preserved, it likely would have shown (1) the number of times that Home Depot employees observed the dangerous conditions in the hours leading up to Mr. Covernali's injuries and (2) the incident happening.

38.    Because Home Depot had a duty to preserve the Aisle 6 video footage and chose not to do so, an adverse inference arises that the destroyed footage was damaging to Home Depot and would have further demonstrated the improper actions of Home Depot's employees in the hours leading up to the incident.

## CAUSES OF ACTION

### Negligence

39.    Plaintiff incorporates by reference all allegations in the preceding paragraphs as though fully set forth herein.

40.    Home Depot had a duty to exercise reasonable care to maintain its store displays and shelves in a safe condition.

41.    Home Depot had a duty to prevent inventory from falling by stocking it safely.

42.    Self-service merchandisers, such as Home Depot, have a duty to display inventory so that customers may procure merchandise safely without assistance.

43.    Home Depot owes a duty to train and supervise employees to identify, watch for, and correct falling merchandise hazards.

44.    Home Depot owed a legal duty to exercise reasonable care while Home Depot's employees performed their duties in the normal course and scope of their employment.

45.    The negligence of Home Depot, including its employees, managers and executives in the course and scope of their employment includes, but is not limited to, the following acts and/or omissions:

     a.    Stacking goods and maintaining shelves in an unsafe manner;

     b.    Failing to restrain the inventory from falling;

     c.    Failing to take proper preventative measures to help eliminate known risks and dangers as a reasonable shopkeeper would do;

     d.    Failing to exercise reasonable care;

     e.    Failing to follow industry standards;

     f.    Failing to train and supervise its employees to place and secure inventory in a manner that prevents fall hazards;

     g.    Failing to adequately investigate and make corrective changes in response to the numerous similar incidents at Home Depots stores nationwide and in this region;

     h.    Failing to adequately identify and mitigate the hazards associated with the sky shelves in accordance with good engineering practices; and

      i.     Choosing to disregard and ignore generally accepted principles of hazard control ("design, guard and warn") as well as its obligation to hold the safety of the public paramount.

46.     Each of the above negligent acts and omissions of Home Depot, whether taken singularly or in combination, were a direct, proximate, and producing cause of the injuries to Plaintiff and Plaintiff's damages that are described below. Accordingly, due to Home Depot's wrongful acts, carelessness, unskillfulness, negligence and gross negligence, Home Depot should be held liable for Plaintiff's damages.

47.     Home Depot's negligence is further supported by the adverse inference that arises from Home Depot's spoliation of the video evidence described above.

48.     Pleading in the alternative, Plaintiff invokes the doctrine of *res ipsa loquitur*. In that regard, Plaintiff's injuries were caused by an instrumentality under the joint or exclusive control of Home Depot. The incident was such that, in the ordinary course of events, it would not have occurred if those who had its management or control had used the proper care, such that the preponderance of the evidence leaves the jury with one logical conclusion: the negligence, if any, lies with Home Depot, and the negligence of Home Depot is the most likely cause of the incident.

49.     From the history of similar incidents at other stores, Home Depot has actual, subjective knowledge about the severe—and potentially fatal—degree of risk posed to consumers from improperly secured goods on Home Depot's "sky shelving."

50.     Despite having recognized the need for corrective measures decades ago and even implementing some of those measures in its other stores, Home Depot chose to keep the same unsafe, unguarded conditions at the store where Mr. Covernali was injured. This amounts to gross negligence, which supports exemplary damages.

51.     Home Depot is vicariously liable for the negligent acts and omissions, jointly and severally, by and through its agents, servants, and/or employees, acting in the course and scope of their respective employment, individually and/or collectively.

**Premises Liability**

52.     Plaintiff incorporates by reference all allegations in the preceding paragraphs as though fully set forth herein.

53.     Pleading solely in the alternative, Plaintiff brings his claims under premises liability theories.

54.     Plaintiff was a prospective customer at Home Depot's store and was there lawfully and legally.

55.     Plaintiff was Home Depot's invitee at the time of the incident.

56.     Home Depot, who owned, operated, and controlled the store, had a duty to keep the premises in a safe condition and knew or should have known about the dangerous conditions of the inventory in Aisle 6.

57.     The incident resulting in Plaintiff's injuries was caused by a dangerous condition, including the presence and condition of the inventory in Aisle 6.

58.     The inventory stored on Home Depot's sky shelves presented unexpected and unusual danger to ordinary users of the store and constitutes a "special defect" as that term is known and understood under Texas law. Defendant knew or should have known of the hazard.

59.     Alternatively, Plaintiff would show that the conditions in Aisle 6 posed a "premises defect" as that term is known and understood under Texas law.

60.     The dangerous presence and condition of the inventory as stacked by Home Depot on sky shelves posed an unreasonable risk of harm to invitees, including Plaintiff. Defendant, who operated and controlled the store, knew or should have known about the dangerous condition and presence of inventory stacked by Home Depot on sky shelves but did not exercise reasonable care to eliminate that risk.

61.     Defendant did not warn Plaintiff about the danger posed by the inventory stacked by Home Depot on sky shelves, and/or failed to take action that would have been reasonably prudent under the circumstances to eliminate that unreasonable risk.

62.     Therefore, Home Depot's negligence proximately caused the incident, as well as Plaintiff's injuries and damages because, for example by:

    a.     Failing to take proper preventative measures to help eliminate known risks and dangers as a reasonable premises owner would do under the same or similar circumstances;

    b.     Failing to correct the hazardous and unsafe condition;

    c.     Stacking goods and maintaining shelves in an unsafe manner;

11

d.   Failing to restrain the inventory from falling;

e.   Failing to take proper preventative measures to help eliminate known risks and dangers as a reasonable shopkeeper would do;

f.   Failing to exercise reasonable care;

g.   Failing to follow industry standards;

h.   Failing to train and supervise its employees to place and secure inventory in a manner that prevents fall hazards;

i.   Failing to adequately investigate and make corrective changes in response to the numerous similar incidents at Home Depot's stores nationwide and in this region;

j.   Failing to adequately identify and mitigate the hazards associated with the sky shelves in accordance with good engineering practices; and

k.   Choosing to disregard and ignore generally accepted principles of hazard control ("design, guard and warn") as well as its obligation to hold the safety of the public paramount.

63.   Such negligence and Defendants' failure to comply with the standard of care owed to an invitee proximately caused the incident and Plaintiff's resulting injuries and damages.

64.   Home Depot's negligence—and actual knowledge of the dangerous condition—is further supported by the adverse inference that arises from Home Depot's spoliation of the video evidence described above.

65.    From the history of similar incidents at other stores, Home Depot has actual, subjective knowledge about the severe—and potentially fatal—degree of risk posed to consumers from improperly secured goods on Home Depot's "sky shelving."

66.    Despite having recognized the need for corrective measures decades ago and even implementing some of those measures in its other stores, Home Depot chose to keep the same unsafe, unguarded conditions at the store where Mr. Covernali was injured. This amounts to gross negligence, which supports exemplary damages.

67.    Home Depot is vicariously liable for the negligent acts and omissions, jointly and severally, by and through its agents, servants, and/or employees, acting in the course and scope of their respective employment, individually and/or collectively.

## DAMAGES

68.    Plaintiff incorporates by reference all allegations in the preceding paragraphs as though fully set forth herein.

69.    As a proximate result of the above acts or omissions on the part of Home Depot, Plaintiff suffered substantial injuries and damages for which he seeks recovery from Home Depot.

70.    Rodolfo Covernali seeks personal injury damages in amounts the jury deems to be fair and reasonable, including damages for past and future physical pain and mental anguish, past and future disfigurement, past and future physical impairment, and past and future medical care and expenses.

71.   Plaintiff also seeks exemplary damages because of the gross negligence described above, and if the jury so finds, Plaintiff seeks an amount the jury deems to be fair and reasonable.

72.   Plaintiff further seeks pre-judgment and post-judgment interest and expenses.

## **JURY DEMAND**

73.   Plaintiff respectfully requests and demands a trial by jury.

## **PRAYER**

Plaintiff prays that Defendant be cited to appear and answer herein, and that upon final trial, Plaintiff recovers actual, compensatory, and exemplary damages, as specified above, from the Defendant; that Plaintiff recovers costs of Court herein expended; that Plaintiff recover the interest, both pre-judgment and post-judgment, to which Plaintiff is entitled under the law; and for such other and further relief, both general and special, legal and equitable, to which Plaintiff may be justly entitled.

Respectfully submitted,

*/s/ Robert E. Ammons*
**Robert E. Ammons**
Texas Bar No. 01159820
Federal ID No. 11742
Attorney-in-Charge
THE AMMONS LAW FIRM, LLP
3700 Montrose Blvd.
Houston, Texas 77006
Telephone:  (713) 523-1606
Facsimile:   (713) 523-4159
rob@ammonslaw.com

OF COUNSEL:

**Adam Milasincic**
Texas Bar No. 24079001
Federal ID No. 1339915
THE AMMONS LAW FIRM, LLP
3700 Montrose Blvd.
Houston, Texas 77006
Telephone:   (713) 523-1606
Facsimile:    (713) 523-4159
adam@ammonslaw.com

*ATTORNEYS FOR PLAINTIFFS*